
**Draft: Appellant's Response Brief & Whistleblow [ATTN: PAGE 4 SECTION I.]**

## I. Introduction

The Appellant respectfully requests this Court to grant an oral hearing in this matter. The Appellee's response attempts to obfuscate and misrepresent the core issues at hand, including wrongful termination and unjust repayment demands, which are grounded in both federal and state law. The Appellant challenges the validity of the Appellee's arguments, especially under doctrines recently addressed by the Supreme Court.

## II. Rebuttal to Appellee's Arguments

### A. Rebuttal to the False Allegations of Breach of Duty

The allegations of "breach of duty" made by the Appellee are fundamentally flawed and do not withstand scrutiny under legal standards. The Appellant's actions were in strict compliance with legal and ethical obligations, including mandatory reporting requirements under federal law. The correspondence with officials such as the Honorable Jeffrey Ragsdale and the Honorable Terry A. Doughty provides evidence of the Appellant's adherence to due process and legal protocols, directly countering the Appellee's baseless allegations. These communications highlight the Appellant's efforts to address procedural violations and defend constitutional rights, demonstrating that the Appellant's actions were in good faith and not a breach of duty.

### B. Addressing the Misuse of Administrative Procedure

The Appellee's arguments are further undermined by their reliance on outdated administrative procedures. Recent legal developments emphasize that courts must independently interpret statutory provisions without undue deference to agency interpretations. This highlights the Appellee's misuse of administrative procedures in an attempt to justify their actions akin to "because I said so." Further, the Appellant's role as an expert witness and whistleblower underscores the misuse of administrative procedures by the Appellee and other parties. The ongoing attacks against the Appellant due to his whistleblower status illustrate systemic misuse of procedures to retaliate against him.

### C. Personal Drama Allegation and the Court's Duty

The Appellee's attempt to trivialize the Appellant's communications and mandatory reports as "personal drama" and to falsely assert that it is not the Court's duty to advocate for the Appellant is not only incorrect but also contradicts the principles of an independent judiciary. As Supreme Court Justice Neil Gorsuch emphasized on August 4, 2024, the purpose of the independent judiciary is to ensure that even when an individual is unpopular or under governmental scrutiny, they receive a fair hearing under the law and the

Constitution. Justice Gorsuch underscored the fundamental rights of all Americans to due process and a fair trial, which applies directly to the Appellant's case.

The Appellant's actions were in direct response to threats against his safety and that of his wife, as well as to report serious cybersecurity and ethical violations within the employer's organization. The Appellant's communications, far from being personal drama, were efforts to protect his legal and constitutional rights and to fulfill mandatory reporting requirements under federal law.

### D. Breach of Duty and Just Cause

The Appellee's argument that the Appellant breached a duty to the employer is a misapplication of the law. The Indiana Court of Appeals has recognized that the "breach of duty" ground for just cause discharges is subject to potential abuse and must be carefully scrutinized to prevent employers from using it as a convenient justification for wrongful termination. In this case, the Appellant's actions were protected under federal whistleblower statutes and cannot be construed as a breach of duty. The allegations of misconduct, including the purported refusal to obey instructions, when the Appellant was headed back to work and would have been appropriately "logged in." The Executive Board knew I was headed to report these issues, Hal Cooper was already aware of the vandalism and threats to his employee, yet failed via negligence to address the situation, and the Appellee's attorney even allowed not only a fraudulent protective order and whistleblower retaliation, but also the Appellant's wife to be impersonated to avoid accountability. The allegation of breach of duty is unsubstantiated and fails to consider the Appellant's protected activities under whistleblower laws and the ethical obligations to report violations. It also caused the unjust repayment demand which was required to be waived.

### E. Rule 26 and Rule 34 Violations

The Appellee has blatantly violated Rule 26 of the Federal Rules of Civil Procedure by failing to disclose all relevant information and has ignored Rule 34 by not properly responding to requests for production of documents. These procedural violations are not merely technical oversights; they represent a deliberate attempt to obfuscate and misdirect the Court's attention from the substantive issues of whistleblower retaliation and religious discrimination. The Appellant included the same information as an appendix to his brief that was included by the Appellee, with exception of the transcript, which was delayed once again by the Appellee's false allegation of breach of duty to override the required and justified *in forma pauperis* status and bankrupt us. This demonstrates the Appellee's self-serving detachment from the severity of the issue. Furthermore, it is evident that the Appellee, along with colluding external parties, are attempting to sanction the Appellant

crucial, as the accurate timeline demonstrates the long-term commitment and contributions made by the Appellant to the organization, further underscoring the wrongful nature of his termination and the subsequent actions taken against him.

### H. Cogency of Appellant's Argument

The Appellee's assertion that the Appellant's argument is not cogent is not only false but also contradicts the recognition of the argument by experienced legal professionals. The argument presented in the Appellant's brief is so cogent that it partially inspired a former Department of Labor attorney and policy writer, John C. Fox, Esq., to develop an article that follows the critical thinking and logic laid out in the Appellant's brief. Furthermore, this same attorney has declined to represent the Appellee, citing a similarly identified conflict of interest being attempted yet again. This clearly demonstrates the merit and substance of the Appellant's argument and further undermines the Appellee's baseless claims.

### I. Religious Freedom and Espinoza Ruling

The Appellee's actions, including the misuse of government power to retaliate against the Appellant for his religious beliefs and freedom of expression, are in direct violation of the Supreme Court's ruling in *Espinoza v. Montana Department of Revenue*. In *Espinoza*, the Supreme Court held that government entities cannot disqualify individuals from public benefits solely based on their religious status. The Appellee's retaliation against the Appellant, which includes leveraging false allegations of misconduct to obscure the Appellant's religious discrimination claims, represents an unconstitutional use of government power against religious freedoms and is designed to prevent us from having and supporting a family, with loss of our home being imminent. This was further substantiated when referencing the opinion given in *The Satanic Temple v. Rokita*, and goes against all common sense, setting an untenable case which would eventually be found non-precedential but still allows imminent harms by being allowed against the Appellant.

Not ruling in our favor under the RFRA will allow The Satanic Temple to obtain standing against Todd Rokita, Prosecutor Mears, the court, etc., because of the refusal to properly acquit an innocent man who had and has immunity. The Appellant's case clearly illustrates the government's misuse of its authority to suppress religious expression and to retaliate against those who exercise their constitutional rights, and in the words of the Honorable Larry J. McKinney, paraphrased, from Turpin v WWSS [they] can't have it both ways.

Despite the false allegations of the lack of cogency in of the Appellant's argument, I inform the opposing parties of this unfortunate and legitimate concern in good faith, because the only alternative is for the court to override its own rulings and cause manifest injustice even upon itself, and a conspiracy against our rights has been readily shown in the court record.

*The Honorable Liz Murrill would understand the cogency of my argument and whistleblow in good faith.*

**J. Waiver and State Attorney General Precedents**

The Appellee's response fails to acknowledge that the waiver required in this case is in regard to the unjust repayment demand, which was intended by the Appellee to not only confuse this court but to attempt to falsely allege the Appellant of a conflict of interest with the Attorney General's Office. This office was also required to advocate on behalf of the Appellant, who committed no crime, had rights denied, and whose vehicles were vandalized after threats on their lives.

This situation is appropriately identified by the Appellant as prosecutorial misconduct and is effectively addressed in the opening line of the Appellant's Brief by referencing *Wilson v. Midland County* in the 5th Circuit Court of Appeals. In *Wilson*, the 5th Circuit reversed a summary judgment in favor of a government entity that had engaged in prosecutorial misconduct, emphasizing the importance of constitutional protections against such actions. The case highlighted how misconduct, including the misuse of legal procedures to suppress evidence and violate rights, could not be tolerated by the courts. The parallels between *Wilson* and the present case are striking, as both involve government entities using their power to suppress justice and to retaliate against individuals who have done no wrong.

The Clerk of Courts from Wayne County is required to submit a Writ of Error regarding the fraudulent protective order that contributed to this situation, especially since the Appeals Court had already expunged the prior wrongful convictions of the Appellant. These wrongful convictions were improperly used to create this unjust scenario, despite receiving information regarding a Brady Violation in the expunged case. Additionally, parties who impersonated the Appellant's wife by contacting his workplace, attempting to have him swatted and wrongfully terminated to conceal their own accountability, further complicate the matter.

This misconduct was known by the Appellee's attorney, Dan Jordan, Esq., and another whistleblower with knowledge of this came forward after experiencing retaliation and filed with the EEOC. This reinforces the argument that the waiver and subsequent actions were not only necessary but were also mishandled by the Appellee and its representatives.

The Attorney General's Office, in this case, was required to advocate for the Appellant due to the gravity of the violations and the subsequent retaliation. Similar actions by state attorneys general, such as those bringing suits against other states or organizations on grounds of constitutional violations, underscore the importance of such advocacy. The Attorney General of Missouri, for instance, brought suit against the State of New York, and the Attorney General of Indiana brought suit against the State of Illinois and Indiana

University's Kinsey Institute, in both cases addressing interstate issues and constitutional violations. These examples underscore the legal precedent and the practical applicability of the waiver in cases involving significant rights violations and government misconduct. The Appellee's attempt to dismiss these precedents further demonstrates their detachment from the severity and the constitutional implications of this case.

**K. Circuit Split and Constitutional Violations**

The Appellant has identified a critical issue regarding the potential for a circuit split between the 5th Circuit Court of Appeals and the 7th Circuit Court of Appeals. Such a split would not only create legal uncertainty but also "split our nation" geographically from the 5th Circuit Court of Appeals near the mouth of the Mississippi River up to the 7th Circuit Court of Appeals. This outcome would have far-reaching consequences, undermining the uniform application of federal law across these circuits and exacerbating regional disparities in legal interpretations. The Appellee's failure to address this issue is telling and further supports the Appellant's argument that this case has significant constitutional implications that must be addressed to prevent further violations of civil rights and constitutional protections.

**III. Conclusion**

For the foregoing reasons, the Appellant respectfully requests that this Court grant an oral hearing. The Appellant also requests that this Court reverse the decision of the Review Board and rule in favor of the Appellant, ensuring that justice is served and constitutional rights are upheld.

Case: 24-30463     Document: 19-1     Page: 6     Date Filed: 08/13/2024

Erin Golden
2421 South Plum Street
Yorktown, IN 47396

August 6, 2024

Honorable Todd Rokita
Indiana Attorney General

302 W. Washington St.
Indianapolis, IN 46204

Dear Attorney General Todd Rokita,

I'm writing to you in concern of Wayne County Courts targeting Catholics through malicious false protective orders. I previously reached out to your office on November 27, 2023, but received no response.

There's an issue with us trying to go through the legal process in Wayne County Court. Previously, We were denied putting in a protective order several times with the clerk of court, along with a lawyer at Jordan law llc Samuel Battistone.
Samuel Battistone quit his job and is now a public defender in Wayne County Courts, but still did not assist us despite rule 26 being broken in vindictive prosecution against us, and a fraudulently obtained protective order being used in an attempt to falsely entrap and convict us. In other words, frame and defame not only my husband, Jon F. "D". Turpin, but also me, his wife. In these actions the colluding parties have prevented us from accessing the court system, and directly violated our due process in an attempt to make it appear as if my husband and I didn't follow the correct and reasonable steps to utilize the court systems.

The colluding parties continue to lie to law enforcement officers, and falsely allege my husband, Jon F. "D". Turpin of being violent and/or out of control, while simultaneously trying to entrap me to circumvent our ability to use the court system, and even to defend ourselves from their intolerable bad behavior, and consistently attempt to permanently destroy our character in dangerous attempts to gain full control of our lives, marriage, and estate because we are faithful, practicing Catholics.

There's something wrong in that county and it seems influenced by corruption. We've been trying to get protective orders consistently, yet are denied, while false ones without legal grounds in an untimely fashion are filed in a felonious, and fractious way against us.

We've consistently been going through the legal system and we came back to the FBI when these dire violations of due process were enacted against us by bad apples.

My husband has been following the correct steps to report this up the chain consistently each step of the way, peacefully, all the way from local law enforcement, all the way to the Secret Service (Executive Branch) and even representatives, and senators in Congress (Legislative Branch)
while attempting to get assistance from the local courts to the federal courts, and was denied due process so badly by the adverse actions of the colluding parties, who even attempted to stop our marriage with false allegations. My husband has not provided false information of any of the colluding parties. He was forced to file Pro Se to protect me because the colluding parties lie to law enforcement and subvert so many facets of the legal system and law only to their favor, that most lawyers understandably don't practice law on such a broad spectrum all the way to SCOTUS, etc.

My husband told the truth in line with our Catholic Faith and in good faith actions out of genuine concern, and he is even, in my opinion, overly honest and Catholic, which they despise and punish.

My husband, Jon F. "D". Turpin is a kind and caring man, attending Catholic Mass every Sunday, is family oriented, maintaining a well-paying, steady job until these unfortunate events, which began with threats against our marriage, civil rights, and safety by individuals, including the other parties mentioned in this letter. My husband is simply trying to protect me from those seeking malicious actions because we're Catholic.

These individuals have threatened and caused harm to my safety, future family, health, finances, and job stability, including my husband when we want to live in peace with our God given rights and request restoration of the damages these colluding parties inflicted upon us.

This hateful behavior towards us is not only dangerous, but is clearly a hate crime to practicing, good faith Catholics.

Thank you for your consideration and for your time on the severity of this matter.

Best Regards,

*Erin Golden*

Erin Golden

